IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARL THOMAS HENDERSON, JR.,

    Petitioner,                        No. CIV S-08-3028 MCE CHS P

    vs.

D.K. SISTO,

    Respondent.          <u>FINDINGS AND RECOMMENDATIONS</u>

                             /

## I.  INTRODUCTION

Petitioner Carl Thomas Henderson is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner is currently serving an indeterminate sentence of twenty seven years to life following his conviction in Los Angeles County for first degree murder with use of a firearm.  The pending petition challenges the execution of that sentence, and specifically, the May 30, 2007 decision of the Board of Parole Hearings ("Board") finding petitioner unsuitable for parole.

## II.  BACKGROUND

The facts of petitioner's life crime were summarized by the Los Angeles County Superior Court on state habeas corpus review:

/////

1

> [O]n August 25, 1981, petitioner was involved in a gang confrontation between the Pirus, of which his cousin was a member, and the Crips. Petitioner spent the day drinking in front of his cousin's apartment complex, although he claims that he was not drunk. A neighbor gave him a shotgun in the late afternoon. That evening, the group entered a van to find the Crips. According to a witness who was with the group, petitioner and one other individual were armed with shotguns. Another witness testified that petitioner shot the first shot at the Crips members in the direction of the victim, who was riding a bicycle at the time. The victim fell off the bike and attempted to hide, but was shot by a Pirus member. He died as a result of multiple gun shot wounds. Petitioner stated that he was not a member of the gang, but was around them often because of his cousin. At the time of the offense, the Crips believed that petitioner's cousin was involved in the killing of one of their members.

(Resp. Ex. 2 at 1.) Police apprehended the van and its occupants; petitioner was among them and was arrested at that time. (BPHT at 15.[1]) A jury found him guilty of first degree murder with use of a firearm. Petitioner was sentenced to an indeterminate term of twenty seven years to life in state prison. His minimum eligible parole date passed in November of 1999.

On May 30, 2007, a panel of the Board conducted a hearing to determine petitioner's suitability for parole.[2] At the hearing, petitioner denied shooting the victim and further denied being in the van at the time of the shooting. (BPH Transcript at 15.) Petitioner stated that he was inside his aunt's apartment, which was down the street, when he heard the

---

[1] All citations to the BPHT refer to the transcript of petitioner's May 30, 2007 hearing, contained in this record within Respondent's Exhibit 1(B).

[2] A different panel of the Board had previously found petitioner to be suitable for parole after an April 27, 2006 hearing, however, Governor Schwarzenegger exercised his discretion to reverse that grant of parole in a written decision dated September 5, 2006. This court notes that on June 9, 2008, the Los Angeles County Superior Court granted habeas corpus relief with respect to the governor's reversal and on October 1, 2009, the California Court of Appeal, Second District, affirmed. *See* 2009 WL 3136646. The state appellate court directed the Board to conduct another parole suitability hearing and to find petitioner suitable for parole unless there was previously undiscovered evidence or new evidence that he would pose a current risk of danger to society if released on parole. This court is unaware of the current status of the proceedings regarding petitioner's prior grant of parole, however, in any event, it is not relevant to the pending petition which attacks the Board's subsequent May 30, 2007 parole suitability determination.

gunshots. (BPHT at 13-14.) Petitioner indicated that he was aware at the time of a dispute between his cousin and members of the Crips gang. (BPHT at 13.) Petitioner stated that, after the shooting, his cousin and the others picked him up in the van and he went with them because he was afraid. (BPHT at 16.)

After considering various positive and negative suitability factors, including the nature of the commitment offense, the panel concluded that petitioner would pose an unreasonable risk of danger to society if released, and thus that he was not suitable for parole. Petitioner sought habeas corpus relief in the Los Angeles County Superior Court. The petition was denied; the superior court held that some evidence supported the Board's decision. (Resp. Ex. 2 at 2.) Petitioner sought relief in the state appellate courts. The California Court of Appeal denied the petition without setting forth a reasoned explanation and the California Supreme Court denied review. (Resp. Ex. 4 & 6.)

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## IV. DISCUSSION

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States Constitution does not, in and of itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). However, where a state's statutory parole scheme uses mandatory language, it "creates a presumption that parole release will be granted" when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)). The Ninth Circuit has conclusively determined that California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*,

482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16. In addition, the Ninth Circuit has conclusively determined that Supreme Court law clearly establishes that "some evidence" must support a parole decision. *Sass*, 461 F.3d at 1128-29; *McQuillion*, 306 F.3d at 904.

Under the some evidence standard, a decision cannot be "without support" or "arbitrary." *McQuillion*, 306 F.3d at 904 (*citing Superintendent v. Hill*, 472 U.S. 445, 457 (1985)); *Biggs*, 334 F.3d at 915. It must have some indicia of reliability. *Id*. The standard is "minimally stringent," and a decision must be upheld if there is any evidence in the record that could support the conclusion reached. *Powell v. Gomez*, 33 F.3d at 40 (*citing Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). Examination of the entire record is not required. *Id*. The Supreme Court has specifically directed reviewing courts not to assess the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The only relevant question is whether there is *any* reliable evidence in the record that could support the decision reached. *See Id*.; *Toussaint*, 801 F.2d at 1105.

In evaluating whether some evidence supported the Board's decision, the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. Thus, the court is bound by California's construction of its own parole suitability laws. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an

unreasonable application of the 'some evidence' principle." *Id.*

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008). The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. § 2402(b). The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. § 2402(c)-(d). The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the proper articulation of the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that a parolee's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be some rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

Here, the Board determined that petitioner was not suitable for parole, in part, because of the nature of his commitment offense. (BPHT at 99-100.) The Board cited additional factors including his criminal record, finding that it demonstrated an escalating pattern of criminal conduct. (BPHT at 100.) The Board noted that petitioner had prior convictions for drunk driving in 1976 and public drunkenness in 1981, and also that he was under the influence

of alcohol at the time of the commitment offense. (BPHT at 101.) The Board commended petitioner's institutional behavior and work record but cited as another unsuitability factor his insignificant participation in self-help programming since 1990. (BPHT at 101, 103.) Additionally, the Board recommended that petitioner "tighten up" his parole plans.[3] (BPHT at 101.) The Board questioned whether petitioner had gained sufficient insight into his crime and further questioned whether he was mitigating his participation by denying his involvement with the shooting despite the evidence at trial which clearly implicated him. (BPHT at 104.) The Board concluded that petitioner should "do some more work with regards to the issues of alcoholism" and anger management. (BPHT at 104.)

On state habeas corpus review, the Los Angeles County superior court examined some of the factors considered by the Board,[4] and held that the record contained some evidence to support the denial of parole:

> The nature of the commitment offense may indicate that a prisoner poses an unreasonable risk of danger to society when the offense is especially heinous, atrocious or cruel. (Cal. Code Regs., tit. 15, §2402, subd. (c)(1); *Rosenkrantz* at 682-683.) In this case, the Board found that the commitment offense was especially heinous because the motive was very trivial in relation to the offense. (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E).) To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk to danger to society if the prisoner is released than is ordinarily present." (*In re Scott* (2004) 119 Cal. App.4th 871, at 893.) In this case, the killing was gang-related. The Court finds the Commission[er] of the Board correct in stating "There's not much I can say about gang killings that people don't already know. They're absolutely stupid. There's no reason for it. Turf issues and retaliation are all inexplicable motivations as far as I'm concerned." (*Reporter's Transcript*, May 30, 2007, p.100.) This

---

[3] A prisoner's understanding and plans for the future are a parole *suitability* factor, as opposed to being an unsuitability factor where there are no such parole plans. Nevertheless, the Board is entitled to consider any information which bears on petitioner's suitability for release. 15 Cal. Code Regs. § 2281(b).

[4] The state superior court did not address the Board's concerns with respect to petitioner's criminal record or his parole plans.

7

>offense was also especially heinous in that multiple victims were attacked in the fight, although only one was shot. (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(A).)
>
>The Board was concerned that petitioner lacks insight into the nature and magnitude of the offense. (Cal. Code Regs., tit. 15, §2402, subd. (d)(3).) Although he claimed many times that he accepted full responsibility for the killing, at the same time he denied involvement and has given inconsistent versions of the events over time. The Board questioned the sincerity of his remorse. (RT at p. 67.) The Board was especially concerned that petitioner has not gained [insight] into his alcohol abuse problems. Although he admitted to drinking four beers and two to three shots of liquor prior to the shooting, he claimed that he was not drunk. At other times he claimed that he was not fully aware of what was happening because of the drinking. Petitioner's two prior convictions involved alcohol; one for drunk driving and the other for being drunk in public. The Board may not rely on [a] prisoner's prior substance abuse problems in finding him unsuitable for parole unless there is a strong causal connection between the drug use and the commitment offense or other criminal conduct (*In re Smith* (2003) 114 Cal. App.4th 343, 370.) In this case, there was such a connection since all of his criminality occurred while he was intoxicated. The Board noted that petitioner has done very little self-help programming that would help him gain insight into his crime and its causal factors. Until petitioner develops a greater understanding and sense of remorse, he continues to be an unpredictable risk of danger to society.
>
>Accordingly, the petition is denied.

(Resp. Ex. 2 at 1-2.)

As set forth by the state appellate court, a prisoner's commitment offense may show unsuitability for parole where committed in an especially heinous, atrocious or cruel manner. 15 Cal. Code Regs. § 2402(c)(1). The facts of a commitment offense can alone be a sufficient basis for denying parole where they are particularly egregious. *In re Rosenkrantz*, 29 Cal.4th 616, 682 (2002); s*ee also Biggs v. Terhune*, 334 F.3d 910, 913-16 (9th Cir. 2003); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006); *Irons v. Carey*, 505 F.3d 846, 852-53 (9th Cir. 2007).[5] The Ninth Circuit has cautioned, however, that repeated denial based

---

[5] In another case, *Hayward v. Marshall* (512 F.3d 536, 546-47 (9th Cir. 2008), a panel of the Ninth Circuit determined that under the "unusual circumstances" of that case, the unchanging factor of the gravity of the petitioner's commitment offense did not, by itself, constitute some evidence supporting the governor's decision to reverse a parole grant on the basis that the

solely on an inmate's commitment offense "will at some point violate due process" where there is evidence of rehabilitation and the prisoner has served the minimum term on his sentence. S*ee also Irons*, 505 F.3d at 853-54.

In this case, both the Board and the state superior court found with respect to petitioner's commitment offense that the motive was inexplicable or very trivial in relation to the offense (15 Cal. Code Regs. § 2402(c)(1)(E)). The state appellate court recognized that in order to fit the regulatory description, petitioner's motive must have been *more* trivial than those which conventionally drive people to commit murder. *In re Scott*, 119 Cal.App.4th 871, 893 (1st Dist. 2004). The reasoning behind this factor is that a person whose motive is unintelligible or cannot be explained may be unusually unpredictable and dangerous. *Id*. Thus, a finding of "triviality" sufficient to justify the denial of parole must somehow relate to present dangerousness. *Id*. at 893. In this case, petitioner's motive was undisputably trivial. Given the high value our society places upon life, however, there is no motive for murder that could not be deemed trivial. *See In re Barker*, 151 Cal.App.4th 346, 374 (1st Dist. 2007). Petitioner's motive was not so trivial, compared to the other trivial reasons for which people commit murder, that it constitutes reliable evidence on its own that he would pose an unreasonable risk of danger to the public, if released on parole.

The state superior court also noted that petitioner's offense was especially heinous because multiple victims were attacked, injured or killed. 15 Cal. Code Regs. § 2402(c)(1)(A). There is no evidence that petitioner personally actually attacked, injured or killed more than one victim.[6] While it appears that the victim was accompanied by other individuals at the time of the

---

petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals vacated the decision in order to rehear it en banc. *Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in *Hayward* is no longer citable precedent.

[6] While the relevant regulation refers specifically to the conduct of the individual prisoner (calling on the Board to consider whether "*[t]he prisoner* committed the offense in an especially heinous, atrocious, or cruel manner" (emphasis added)), the relevant factor whether multiple victims were attacked, injured or killed appears to focus on the criminal act as a whole rather

1  shooting, the record before the Board and this court is vague as to whether petitioner and his
2  crime partners actually shot at or attacked anyone other than the victim.  In any event, even if
3  multiple victims were in fact attacked, and petitioner's motive was more trivial than typical for
4  first degree murder, the overall nature and circumstances of the offense are not so heinous or
5  egregious that they continue to be probative, on their own, of his current dangerousness this many
6  years later.

7  This is not a case, however, where the Board relied solely on petitioner's
8  commitment offense to support the denial of parole.  The state court noted that the Board
9  additionally found that petitioner lacked demonstrated insight or understanding into the nature and
10 circumstances of his commitment offense and his prior alcohol abuse.  Petitioner's "past and
11 present attitude toward the crime" (15 Cal. Code Regs. § 2402(b)) and any lack of remorse or
12 understanding of the nature and magnitude of the offense (15 Cal. Code Regs. § 2402(d)(3)) are
13 properly considered.  *In re McClendon*, 113 Cal. App.4th 315, 322 (1st Dist. 2003); s*ee also In re*
14 *Shaputis*, 44 Cal.4th at 1261 n.20 ("petitioner's failure to take full responsibility for past violence,
15 and his lack of insight into his behavior, establish that the circumstances of petitioner's crime and
16 violent background *continue* to be probative to the issue of his *current* dangerousness.")

17 The superior court expressed concern, for example, that petitioner claimed to
18 accept full responsibility for the killing, yet at the same time denied involvement.  The law is clear
19 that petitioner cannot be required to admit guilt in order to be found suitable for parole.  Cal.
20 Penal Code §5011(b); 15 Cal Code Regs. § 2236.  Here, other than petitioner's denial of guilt,
21 there is no evidence in the record that he lacks remorse or insight into the nature and magnitude of

---

23 than one individual's actions.  *See* 15 Cal. Code Regs. § 2281(c)(1)(A).  In addition, the panel is specifically directed to consider "the number of victims of the crime for which the prisoner was sentenced..."  15 Cal. Code Regs. § 2280.  At the same time, petitioner must be given individualized consideration of all specified criteria.  *In re Rosenkrantz*, 29 Cal.4th 616, 677 (2002).  Nevertheless, at least one district court has found that it is enough to support a finding that the crime was "especially heinous, atrocious, or cruel" that two victims were attacked by a habeas corpus petitioner and his crime partners.  *See Jackson v. Horel*, No. 07-1334, slip. op. at 8 (N.D. Cal. March 31, 2009).

10

the commitment offense. Thus, it appears that any conclusion that he lacks remorse or insight into the commitment offense is based solely on his refusal to admit guilt. Such refusal cannot constitute evidence that he is not suitable for parole. *In re Aguilar*, 168 Cal.App.4th 1479, 1491 (2nd Dist. 2008).

The superior court also noted the Board's concern that petitioner had participated in insufficient self-help programming and that he lacked insight into his prior alcohol use and criminality:

> Although he admitted to drinking four beers and two to three shots of liquor prior to the shooting, he claimed that he was not drunk. At other times he claimed that he was not fully aware of what was happening because of the drinking. Petitioner's two prior convictions involved alcohol; one for drunk driving and the other for being drunk in public.

(Resp. Ex. 2 at 2.) It was noted that petitioner had previously participated in Alcoholics Anonymous "for a number of years" but was no longer an active participant. (BPHT at 43.) In response to questioning about his past alcohol use, petitioner stated simply that he "likes to drink" and denied that he is or ever was an alcoholic. (BPHT at 27.) Yet petitioner did admit that his prior record indicated he was out of control with his drinking. (BPHT at 27.) Petitioner denied being drunk on the night of his offense, stating that he was "just a little discombobulated at that particular time." (BPHT at 19.) He characterized the four or five beers and two to three shots he consumed as "[r]eally not that much" to drink. (BPHT at 19.) Regardless of whether petitioner is an alcoholic, there is a causal connection between his alcohol usage and his criminality since all three of his convictions were alcohol related. Given this causal connection and his current attitude about his past alcohol usage, the Board could reasonably infer that petitioner lacks insight into his prior alcohol use and criminality resulting therefrom. This is probative to an assessment of his current dangerousness, and constitutes at least a modicum of evidence that he would pose a risk of danger if released.

/////

The record contains with respect to an assessment of petitioner's current dangerousness mostly positive factors, however, this court is precluded from re-weighing the evidence. Due process requires only that the Board's decision be supported by some evidence in the record. The circumstances of petitioner's commitment offense, coupled with his lack of recent participation in self-help programming and apparent lack of insight into the relationship between past alcohol use and criminal behavior, provide at least a modicum of evidence that he would pose a risk of danger to the public if released into free society. The decision of the Los Angeles County Superior Court upholding the Board's denial of parole is not contrary to, or an unreasonable application of any clearly established due process law as determined by the Supreme Court, nor based on an unreasonable determination of the facts in light of the evidence. Accordingly, no relief can be granted.

## V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 11, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE